IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CLARENCE MONTGOMERY, | )<br>) |
| Plaintiff, | )<br>) |
| | ) No. 14 C 3864 |
| v. | )<br>) Magistrate Judge |
| VILLAGE OF POSEN; DONALD SCHUPEK; DOUGLAS HOGLUND; FRANK GIORDANO; and VICKIE PAGGI, | ) Maria Valdez<br>)<br>)<br>) |
| Defendants. | )<br>) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Clarence Montgomery brought this complaint under 42 U.S.C. § 1983 to redress Defendants' alleged violation of his Fourth Amendment rights related to a warrantless search of Montgomery's leased property. The matter is now before the Court on Defendants' Motion for Summary Judgment [Doc. No. 67]. For the reasons that follow, Defendants' motion is denied.

**DISCUSSION**

**I.  LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS**

As an initial matter, the Court notes that Defendants failed to submit a statement of material facts in violation of Local Rule 56.1, which provides that:

> With each motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 the moving party *shall* serve and file . . . a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law. . .

1

> The statement . . . shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph. *Failure to submit such a statement constitutes grounds for denial of the motion.*

Local Rule 56.1(a)(3) (emphasis added); *see FirstMerit Bank, N.A. v. 2200 North Ashland, LLC*, No. 12 C 572, 2014 WL 6065817, at *4 (N.D. Ill. Nov. 13, 2014) (denying summary judgment for movant's failure to comply with Local Rule 56.1, explaining that "[i]t simply is not the court's job to sift through the record to determine whether there is sufficient undisputed evidence to support a party's claim or defense as a matter of law"); *Daoust v. Abbott Labs.*, No. 05 C 6018, 2006 WL 2711844, at *4 (N.D. Ill. Sept. 19, 2006) ("The court should be spared from engaging in this type of guesswork. The aim of a 56.1(a)(3) statement is to organize the arguments, give the [nonmovant] an opportunity to respond, and economize court resources by lessening the need to 'scour the record.'"); *see also Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) ("We have also repeatedly held that a district court is entitled to expect strict compliance with Rule 56.1."). Because Plaintiffs' motion does not demonstrate that there are no material factual disputes, it amounts to no more than a recitation of a legal standard, with citations case law, and "[a] legal standard, even if correct, is useless to us unless applied to the facts of the case, particularly if it is a broad legal standard." *Malec v. Sanford*, 191 F.R.D. 581, 586 (N.D. Ill. 2000). The motion therefore must be denied.

## II. MATERIAL FACTS

Even if Defendants had complied with Local Rule 56.1, the motion would likely be denied. In order to explore the merits of the case, the Court has endeavored to assemble the following undisputed material facts from the second amended complaint, the pretrial order submitted before the District Court then presiding, and the parties' briefs.

Defendant Schupek is Posen's Village President; Hoglund is Posen's Chief of Police; Paggi is the Assistant Chief of Police; and Giordano is a police officer and building inspector for the village. Plaintiff Montgomery rented a property located at 13939 Harrison St., Posen, Illinois, consisting of a 4000 square foot building on a 6000 square foot lot. He planned to start a business at that location, but he also used it to store equipment, tools, service trucks, trailers, and miscellaneous parts for his construction business, which operates out of a different location in Chicago.

At around 4:00 p.m. on May 14, 2014, Plaintiff received a call from the Posen police department. The caller was Giordano, who told him that village inspectors, accompanied by village police, wanted to inspect the Harrison premises that evening. Plaintiff told the inspector that he would allow a building inspection the following morning on May 15 at 10:00 a.m. and would meet them at the facility. But at 9:30 a.m. that day, he called the police department and told Giordano he withdrawing his consent to the inspection.

Schupek gave a final authorization to the inspectors and officers to enter the Harrison Street property. They broke a security chain and locks on its entrance

gates and door and searched the property. Montgomery was barred from entering the building during the search but was nearby outside the rear gate. After the search was completed, Plaintiff was issued several Village Code violation tickets.

Montgomery's landlord, Bruce Barr, had requested and consented to the search. He asked the police and inspectors to accompany him when entering the premises. (Defs.' Mot. Ex. B at 1.) Montgomery's Rental Agreement includes the following language:

> The LANDLORD reserves the right to enter the residence at reasonable times to inspect, make necessary repairs or improvements, supply services or show it to prospective residents, purchasers, workmen, appraisers, inspectors or contractors and the TENANTS agree to cooperate. However, the LANDLORD shall notify the TENANTS of the time and date of the entry of the residence and the TENANTS shall be present if they so desire.

(Rental Agreement, Defs.' Mot., Ex. B at 4, ¶12.)

### III. <u>ANALYSIS</u>

Plaintiff alleges that the search of his property was in violation of his Fourth Amendment right to be free from unreasonable searches. Administrative searches by building inspectors "are significant intrusions upon the interests protected by the Fourth Amendment, . . . [and] such searches when authorized and conducted without a warrant procedure lack the traditional safeguards which the Fourth Amendment guarantees to the individual . . . ." *Camara v. Municipal Court of City and County of San Francisco*, 387 U.S. 523, 534 (1967); *see also Makula v. Vill. of Schiller Park*, 1995 WL 755305, at *4 (N.D. Ill. Dec. 14, 1995) ("Simply put, 'the power of municipal building, fire, health, and other similar officials to enter any

4

building without permission for the performance of duties is, in the absence of an emergency, violative of the constitutional guarantees against unreasonable search and seizure, unless a search has been authorized by a valid search warrant.'") (citation omitted). The Supreme Court has explained that warrantless inspection searches clearly implicate the purposes behind the Fourth Amendment, because "when the inspector demands entry, the occupant has no way of knowing whether enforcement of the municipal code involved requires inspection of his premises, no way of knowing the lawful limits of the inspector's power to search, and no way of knowing whether the inspector himself is acting under proper authorization." *Camara*, 387 U.S. at 532.

Defendants do not argue that any exigency warranted the search of Plaintiff's property.[1] Defendants' only stated basis for claiming they had lawful authority to enter Plaintiff's property was the permission granted by Montgomery's landlord. The question, therefore, is whether Barr's consent was sufficient to authorize entry. An exception to the Fourth Amendment's warrant exists "when someone with actual or apparent authority consents to the search or seizure," and "[a] third party with common authority over the premises sought to be searched may provide such consent." *United States v. Aghedo*, 159 F.3d 308, 310 (7th Cir. 1998). "Common authority requires 'mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the cohabitants has the right to permit the inspection in his own right and that the

---

[1] Defendants have not described the nature of the ordinance violations. It can be presumed, however, that if they implicated urgent health or safety concerns, Defendants would have seen fit to list the violations somewhere in their motion.

5

others have assume the risk that one of their number might permit the common area to be searched.'" *United States v. Brown*, 328 F.3d 352, 356 (7th Cir. 2003) (citation omitted). Defendants have not established as a matter of law that Barr had common authority over the premises with Montgomery. To the contrary, the fact that Barr did not have keys to all the locks, which had to be broken to effect entry, strongly suggested that the landlord did not have joint access or control.

Barr's status as Montgomery's landlord does not by itself establish that the consent was valid, because "[a] landlord does not have authority to permit a search of his tenant's leasehold . . . ." *United States v. Chaidez*, 919 F.2d 1193, 1201 (7th Cir. 1990) (citing *Chapman v. United States*, 365 U.S. 610, 616 (1961)); *see Georgia v. Randolph*, 547 U.S. 103, 110-12 (2006) ("A tenant in the ordinary course does not take rented premises subject to any formal or informal agreement that the landlord may let visitors into the dwelling . . . .") (citing *Chapman*, 365 U.S. at 617). It is possible that certain unusual tenancy agreements could provide a landlord with such authority, but Defendants have not established that the standard language of the Rental Agreement allows Barr an unfettered right to allow third parties to access Montgomery's property without his consent. *See Randolph*, 547 U.S. 110-12.

Furthermore, there is an issue of material fact as to whether Defendants reasonably believed Barr had the authority to allow third parties to enter the locked property. *See United States v. Richards*, 741 F.3d 843, 850 (7th Cir. 2014) ("When determining whether an individual has apparent authority to consent, the court employs an objective standard; officers may conduct a search without a warrant if

they 'reasonably (though erroneously) believe' that the person consenting had authority over the premises."). The undisputed material facts establish only that Defendants were aware the property was leased by Montgomery, he did not consent to the search, and his landlord – who did not clearly have common authority over the premises – requested and purported to authorize the search. A jury could find that Defendants did not reasonably believe Barr had the authority to consent to the search. *See Randolph*, 547 U.S. at 112 ("A person on the scene who identifies himself, say, as a landlord or a hotel manager calls up no customary understanding of authority to admit guests without the consent of the current occupant.").

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [Doc. No. 67] is denied.

**SO ORDERED.**                      **ENTERED:**

*/s/ Maria Valdez*

**DATE:**    **October 23, 2015**                 _____
                                                              **HON. MARIA VALDEZ**
                                                              **United States Magistrate Judge**