IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CLARENCE MONTGOMERY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 14 C 3864 |
| v. | ) | |
| | ) | Magistrate Judge |
| VILLAGE OF POSEN; DONALD SCHUPEK; DOUGLAS HOGLUND; FRANK GIORDANO; and VICKIE PAGGI, | ) | Maria Valdez |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

*Pro se* Plaintiff Clarence Montgomery brought this complaint under 42 U.S.C. § 1983 to redress Defendants' alleged violation of his Fourth Amendment rights related to a warrantless search of Montgomery's leased property. On the morning of trial, the parties reached a settlement agreement, and the jury trial was stricken. Plaintiff subsequently filed the present motion to withdraw from the settlement agreement [Doc. No. 100]. For the reasons that follow, Plaintiff's motion is denied.

## BACKGROUND

Montgomery's complaint alleges that Defendant Village of Posen's President, Chief of Police, and building inspector, among others, unconstitutionally authorized and/or conducted a search of his rented business property and ultimately issued a number of code violation tickets. *See Montgomery v. Village of Posen*, No. 14 C 3864, 2015 WL 6445456, at *1-2 (N.D. Ill. Oct. 23, 2015) (denying Defendants' motion for

1

summary judgment). Defendants do not deny that a search took place but contend they had the authority to do so because Montgomery's landlord consented to the search. *Id.* at *2.

The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) on April 30, 2015. At a status hearing shortly after the reassignment, Defendants indicated their intent to file a motion for summary judgment. That motion was denied on October 23, 2015. *Montgomery*, 2015 WL 6445456, at *3. Shortly thereafter, the matter was set for a settlement conference, which took place on March 3, 2016. No settlement was reached that day, and a further status was set to schedule a trial date. (3/3/16 Minute Order [Doc. No. 77].) The jury trial was then set for June 27, 2016. (3/17/17 Minute Order [Doc. No. 80].)

A jury instruction conference was held on Thursday, June 23, 2016, four days before the trial was to begin. During that conference, the Court took a break to allow the parties to discuss settlement options. (*See* 3/2/17 Hr'g Tr. [hereinafter "Tr."] at 8:25-11:1, 33:6-34:1 [Doc. No. 125].) Those discussions were not fruitful, and the parties appeared for trial on June 27, 2016.

Shortly after the case was called, and before the jury venire was brought in, the Court inquired whether the parties had explored all settlement options. (Tr. at 12:16-13:1, 34:8-18.) Both sides ultimately agreed to meet with the Court in chambers to revisit the possibility of settlement. (Tr. at 35:19-23, 35:12-17.) The settlement conference lasted a couple of hours, and each side came into chambers to

speak to the Court several times. (Tr. at 35:19-22.) Those conferences resulted in a settlement agreement, and the parties signed a Settlement Checklist/Term Sheet, the terms of which were written by the Court to reflect the parties' agreement. (Defs.' Resp., Ex. A.) The checklist provided that Defendants were to pay Plaintiff a total of $10,000 and move to dismiss with prejudice all administrative tickets issued to Plaintiff as a result of the search of his property on May 15, 2014. (Ex. A at 1-2.) In exchange, Plaintiff agreed to dismiss his lawsuit with prejudice. (*Id.* at 3.) Under the section captioned Effective Date, the checklist stated that there would be "A binding agreement today." (*Id.*) The other Effective Date option – "No binding agreement until the typed settlement agreement is signed" – specifies that it applies only "in instances where parties need to obtain further approval given the structure of the company or municipality . . ." (*Id.*)

After the parties signed the agreement, they appeared in court to put the settlement on the record. (*See* Tr. at 14:12-15:19, 18:21-19:12, 39:14-40:1; Defs.' Resp., Ex. B.) The following colloquy occurred:

THE COURT: Good morning to you both. The Court has just concluded a settlement conference, and based on what the parties have stated to the Court a settlement has been reached. Is that, in fact, correct, Mr. Montgomery?

THE PLAINTIFF: That is correct.

THE COURT: And is that correct, Mr. Niemeyer?

MR. NIEMEYER: Yes, your Honor.

THE COURT: All right. The specific terms of the settlement are confidential. The Court has provided Mr. Niemeyer with a settlement checklist that he needs to work out with Mr. Montgomery. At

3

>the end of the settlement checklist is a space for signatures. I need a signature of Mr. Montgomery and Mr. Niemeyer on behalf of the defense.
>
>Mr. Montgomery, I want to make sure you understand that during the course of the settlement conference that we had, you were completely free to say yes or no, depending on what you wanted to do. Is that, in fact, correct?

THE PLAINTIFF: That is correct.

THE COURT: All right. And Mr. Niemeyer, you also?

MR. NIEMEYER: Yes, Judge.

(Ex. B at 2-3.)

Three days later, Plaintiff filed the present Motion to Withdraw from Settlement Agreement. Defendants filed a response and Plaintiff replied pursuant to a briefing schedule set by the Court. On September 14, 2016, the Court entered an order scheduling an evidentiary hearing on the motion for October 19, 2016.[1]

One week before the evidentiary hearing was to take place, Plaintiff filed a motion to recuse. In light of that motion, the evidentiary hearing date was stricken; it was reset after the motion to recuse was denied. (1/24/17 Mem. Op. [Doc. No. 119].) The evidentiary hearing finally took place on March 2, 2017, and both Plaintiff and defense counsel Stephen Niemeyer offered testimony.

---

[1] Although it is questionable whether an evidentiary hearing was required under the circumstances, one was scheduled in an abundance of caution. *See Wilson v. Wilson*, 46 F.3d 660, 664 (7th Cir. 1995) (explaining that an evidentiary hearing is required "where the material facts concerning the existence or terms of an agreement to settle are in dispute" but finding no error in district court's refusal to conduct a hearing on an agreement memorialized in open court).

# DISCUSSION

I. **MOTION TO STRIKE**

As an initial matter, the Court will address Defendants' Motion to Strike Plaintiff's Memorandum of Law in Support of Plaintiff's Motion to Withdraw from Settlement Agreement [Doc. No. 111]. On October 4, 2016, nearly a month after the pleadings on Plaintiff's motion to withdraw were completed, Plaintiff filed a memorandum of law in support of his motion to withdraw. [Doc. No. 110.] The motion was not noticed for presentment and was filed without prior leave of court. The following day, Defendants filed their motion to strike the memorandum on the basis that it introduces new arguments, and Plaintiff failed to provide notice or properly move to file a supplemental proceeding, in violation of Federal Rule of Civil Procedure ("Rule") 15(d) ("On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading . . .").

The Court agrees that the memorandum should be stricken, and it will not be considered. Although Plaintiff is acting *pro se*, he has shown himself to be a relatively sophisticated litigator in the course of the case. Moreover, he is clearly aware of the need to obtain leave to file documents in certain circumstances. For example, on September 9, 2016, he filed a Motion to File Exhibits *Instanter* [Doc. No. 107][2] to excuse his late filing of exhibits requested by the Court in July. In any event, a supplemental pleading filed pursuant to Rule 15(d) is allowed in order to set out "any transaction, occurrence, or event that happened after the date of the

---

[2] That motion was not properly noticed and thus was not heard by the Court. The motion is now granted.

pleading to be supplemented." Fed. R. Civ. P. 15(d). Nothing in his supplemental memorandum relates in any way to events occurring after his motion pleadings were filed. Accordingly, Defendants' motion to strike is granted.

## II. MOTION TO WITHDRAW

Plaintiff's one-page motion states that he is entitled to withdraw from the settlement agreement because: (1) he signed the agreement under duress; (2) his exhibits were not admissible into evidence; (3) he could have continued to trial with the testimony of two witnesses; (4) he was under the belief that his case would be dismissed if no settlement was reached; and (5) he was not told he could continue with the trial with just the witnesses' testimony and without the inadmissible evidence. He alleges that had he known, he would have continued to trial as scheduled.

Plaintiff's reply brief goes into more detail about the reasons the settlement was invalid. Plaintiff argued that he was under duress on the morning of trial because he was prepared only for trial, not for settlement; the Court advised Plaintiff the case was not worth much and challenged Plaintiff's interpretation of the "fruit of the poisonous tree" doctrine in the context of this case; and the Court stated "I will shut you down, I will," leading him to believe the case would be dismissed. (Pl.'s Reply at 6-7.) In addition, Plaintiff's brief alleges that the Court "pushed for a signature on the checklist before the agreement was worked out," and that "[t]he court did not give time to clearly view the checklist." (*Id.*)

A. **Testimony**

At the hearing, Plaintiff repeated his claims the settlement was invalid due to duress. (Tr. at 6:10-12, 19:17-23.) He stated that the notion of duress occurred to him shortly after the conference, because the decision to settle was "against [his] better judgment," (Tr. at 7:16-18). The nature of the claimed duress was that he only prepared for trial, not settlement, on June 27, (Tr. at 4:4-8, 14-21), and thus the settlement discussions were unexpected, "an ambush because of the fact that I was unaware of it and it was sprung on me," (Tr. at 7:4-5). Plaintiff further offered his belief that if he did not "respond in a favorable way, that everything would be over and I would walk away just like I came in." (Tr. at 20:23-25.)

Plaintiff defined duress as having "some pressure on you . . . coming from [other] sources. It could be coming from anywhere." (Tr. at 20:10-13.) According to Plaintiff, "[d]uress also deprives you of your free will to think clearly at the time and it also robs you of your clear judgment because you're put in a situation – this is so much like an interrogation where you get a person in a certain position when they become vulnerable and you add a little pressure to it and you get the person to say what they want – that you desire." (Tr. at 20:13-19.)

Plaintiff testified that the settlement checklist he signed at the end of the conference is not binding because he did not read it before it was put before him to sign, (Tr. at 7:19-20, 7:23-8:4, 21:18-23, 22:13-23:2), and he could not read it well due to the lighting of the courtroom, (Tr. at 7:22-23, 22:7-8, 31:5-23). He asserted

7

that if someone had told him to take a few minutes to look at the checklist, he would have done so. (Tr. at 22:9-12.)

Although he later backtracked and claimed he was rushed into signing the agreement, (Tr. at 24:4-10), he admitted that "no time restraint was mentioned" when he was given the checklist and before he signed it, (Tr. at 21:1-13, 28:24-29:1). Defense counsel also testified that he observed "absolutely" no time constraints on Plaintiff's review of the settlement checklist. (Tr. at 48:8-49:1.) While defense counsel calculated that it took Plaintiff less than a minute to review the checklist at the evidentiary hearing, (Tr. at 27:12-25), Plaintiff claims he was not given even that amount of time to review it on June 27. (Tr. at 28:2-5.)

Plaintiff's explanation of the reasons he was allegedly unable to review the agreement are somewhat muddled. He testified that he was not given the opportunity to review it "[b]ecause it was passed to [defense counsel] first from hand to hand to hand. Three hands it went through, from the Clerk --- . . . . Because under the circumstances again, asked to sign a document, we had talked about it in the room and what appeared on the docket is not what we talked about it once you look at it. It wasn't time given. . . . Because I'm listening to the Judge and she said she needed a signature and I signed it." (Tr. at 28:7-23.) But Plaintiff had previously stated that "I went at that desk and looked at it closely and then I would have made my decision then." (Tr. at 22:11-12.)

After he finished his testimony, the Court stated, without objection from Plaintiff, that the record reflected that Plaintiff "had opportunity to testify and he was not limited in any way." (Tr. at 32:5-7.)

B. <u>Analysis</u>

A court's decision whether to enforce a settlement agreement is reviewed under the deferential abuse of discretion standard. *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 507 (7th Cir. 2007); *see Carr v. Runyan*, 89 F.3d 327, 331 (7th Cir. 1996). A district court's findings of fact "must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility." Fed. R. Civ. P. 52(a)(6); *see Glass v. Rock Island Refining Corp.*, 788 F.2d 450, 455 (7th Cir. 1986) (noting that Rule 52 applies to a court's findings "with regard to whether a plaintiff knowingly and voluntarily entered a settlement agreement").

It is well settled that "'a settlement agreement or stipulation voluntarily entered into cannot be repudiated by either party and will be summarily enforced by the Court.'" *Wilson v. Wilson*, 46 F.3d 660, 667 (7th Cir. 1995) (quoting *Cummins Diesel Mich., Inc. v. The Falcon*, 305 F.2d 721, 723 (7th Cir. 1962). "[I]n the absence of a showing of fraud, duress, or other circumstances suggesting that the settlement was not knowing or voluntary, the district court need not examine the circumstances surrounding the settlement." *Newkirk v. Vill. of Steger*, 536 F.3d 771, 774 (7th Cir. 2008).

The enforceability of a settlement agreement, like any contract, is governed by local state law. *Carr*, 89 F.3d at 331. Under Illinois law, a settlement agreement is enforceable if there is an offer, acceptance, and a meeting of the minds as to the agreement's terms. *Dillard.*, 483 F.3d at 507. "Whether a 'meeting of the minds' occurred depends on the parties' objective conduct, not their subjective beliefs." *Id.*; *see also Newkirk v. Vill. of Steger*, 536 F.3d 771, 774 (7th Cir. 2008) (explaining that under Illinois law's objective theory of intent, the parties' "[s]ecret hopes and wishes count for nothing. The status of a document as a contract depends on what the parties express to each other and to the world, not on what they keep to themselves") (citation and internal quotations omitted).

"Illinois courts favor voluntary settlements, and litigants are bound by them, regardless of how unwise they may seem in retrospect, unless they are grossly unfair or unconscionable." *Opper v. Brotz*, 661 N.E.2d 1159, 1162 (Ill. App. Ct. 1996). Accordingly, voluntary agreements in Illinois are presumptively valid unless a party proves, for example, "(1) fraud; (2) unconscionable settlement terms . . .; (3) mutual mistake or material fact; (4) the subsequent occurrence of unforeseeable events; (5) legal disability . . . ; or (6) a serious inequity in the bargaining process, such as the existence of grossly disparate bargaining positions, which includes such factors as the parties' relative education and sophistication, representation by legal counsel, and the presence of duress or oppression." *Id.* Moreover, the party seeking to set aside a voluntary settlement agreement must prove invalidity by clear and convincing evidence. *Id.*

10

The Court finds that Plaintiff has failed to prove duress under any standard, and certainly not by clear and convincing evidence. "Duress is a condition where one is induced by a wrongful act or threat of another to make a contract under circumstances which deprive one of the exercise of free will. The acts or threats must be 'wrongful' if they are to constitute duress. Wrongfulness is not limited to acts that are criminal, tortious or in violation of a contractual duty, but extends to acts that are wrongful in the moral sense." *Enslen v. Village of Lombard*, 470 N.E.2d 1188, 1190 (Ill. App. Ct. 1984); *see also Porter v. Chi. Bd. of Educ.*, 981 F. Supp. 1129, 1132 (N.D. Ill. 1997) (explaining that the party claiming duress must prove it by clear and convincing evidence).

Plaintiff's testimony that he was under such duress during the conference that he lacked free with was not credible. He had participated in two previous conferences, one mediated by the Court, that did not result in settlement. He certainly knew he could say no, having done so at least twice before. Furthermore, it is telling that only after the conference was completed did he look back and conclude that because the settlement was "against [his] better judgment," (Tr. at 7:16-19), he must have been under duress. It is clear under the circumstances that Plaintiff merely had a change of heart, which is not a reason not to enforce a valid settlement agreement. *See Hyde Park Union Church v. Curry*, 942 F. Supp. 360, 363 (N.D. Ill. 1996) ("[D]efeated expectations do not entitle a party to repudiate promises made to opposing parties or the court."); *Glass*, 788 F.2d at 454 ("A party to a settlement cannot avoid the agreement merely because he subsequently

believes the settlement insufficient . . ."); *In re Marriage of Maher*, 420 N.E. 2d 1144, 1147 (Ill. App. Ct. 1981) ("[S]ettlements which have been assented to by the parties may not be cancelled solely upon the withdrawal of one party's assent prior to entry of the judgment.").

The Court does not doubt that Plaintiff felt some pressure during the conference; that is inherent in the nature of any settlement conference, particularly one on the eve of trial. *See Berntson v. Cheney*, 815 F. Supp. 1145, 1147 (N.D. Ill. 1993) ("People have many reasons for agreeing to a settlement. Avoiding the stress of a trial is probably a fairly common reason."). But the pressure Plaintiff faced is not the equivalent of duress. "Duress does not exist . . . where consent to an agreement is secured because of hard bargaining positions or the pressure of financial circumstances unless the conduct of the party obtaining the advantage is shown to be tainted with some degree of fraud or wrongdoing." *Enslen*, 470 N.E.2d at 1190.

Similarly, any pressure put on Plaintiff by the Court's assessment of his case and evidence did not constitute duress. "Coercion occurs when a judge threatens to penalize a party that refuses to settle. . . . But a judge may encourage settlement, . . . and he or she is not prohibited from expressing a negative opinion of a party's claim during discussions as a means to foster an agreement." *Gevas v. Ghosh*, 566 F.3d 719-20 (7th Cir. 2009) (holding that a plaintiff's assertion that a judge "prematurely and disparagingly assessed the merits of his claim" does not amount to coercion). And while Plaintiff's pleadings argue that he interpreted certain of the

Court's remarks as threats to dismiss his case if he did not settle, he offered no admissible evidence or testimony to support the notion that he was actually threatened in any way.

Plaintiff's contentions that he did not read the checklist because he was under oppressive time constraints and the courtroom had insufficient lighting cannot be believed. His conflicting testimony about whether time limits were even placed on him cannot possibly meet the clear and convincing standard of duress. If poor lighting were a problem, Plaintiff failed to explain why he did not raise the issue on June 27. And whether or not he read the document, he does not dispute that he did in fact sign it, meaning he is bound by its terms. *See Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992) ("It is a fundamental principle of contract law that a person who signs a contract is presumed to know its terms and consents to be bound by them."). In any event, Plaintiff's reported failure to read the agreement before signing appears to be irrelevant, as he does not dispute that the checklist reflected the terms the parties had agreed to that day.

Plaintiff's testimony that he can withdraw from the settlement because defense counsel lack authority to enter the agreement is also a non-starter. The unrebutted testimony of defense counsel established that he was in contact with his clients and could not have entered into a settlement agreement without their express authority, (Tr. at 45:1-12), and it is not Defendants who seek to undo the settlement.

Plaintiff freely and fully participated in the settlement conference. He is a sophisticated businessman who was well aware of the various possible outcomes of a settlement conference. His testimony did not establish that at any time during the conference he was confused about the nature of the proceedings or agreement. *Mattingly v. City of Chi.*, 897 F. Supp. 375, 378 (N.D. Ill. Sept. 8, 1995) (finding no duress where the plaintiff fully participated in settlement discussions, never appeared confused about the agreement's terms, and provided no factual support other than conclusory statements). He never expressed that he needed more time, better lighting, or otherwise felt undue pressure to settle. Plaintiff not only signed the agreement but memorialized his assent on the record in open court. *See Zendejas v. Reel Cleaning Servs., Inc.*, No. 05 C 6933, 2009 WL 2431299, at *9 (N.D. Ill. Aug. 6, 2009). The Court concludes that the settlement agreement was not the product of duress and is therefore enforceable on its terms. Plaintiff's motion to withdraw must be denied.[3]

---

[3] Shortly before the evidentiary hearing in this matter, Plaintiff filed two nearly identical motions – a Motion to Suppress [Doc. No. 123] and a Motion *in Limine* [Doc. No. 124]. Both motions related to exhibits Defendants had proposed to enter at trial and are thus irrelevant to this case. The motions are denied as moot.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Withdraw from Settlement Agreement [Doc. No. 100] is denied. Plaintiff's Motion to File Exhibits *Instanter* [Doc. No. 107] is granted. Defendants' Motion to Strike Plaintiff' Memorandum of Law in Support of Plaintiff's Motion to Withdraw from Settlement Agreement [Doc. No. 111] is granted. Plaintiff's Motion to Suppress [Doc. No. 123] and Motion *in Limine* [Doc. No. 124] are denied. Civil case terminated.

**SO ORDERED.**                                **ENTERED:**

*[signature: Maria Valdez]*

**DATE:**     **March 23, 2017**                _____

                                                           **HON. MARIA VALDEZ**
                                                           **United States Magistrate Judge**